UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|                                      |   |                                |
|--------------------------------------|---|--------------------------------|
| WALTER E. CAMPBELL COMPANY,          | ) |                                |
|                                      | ) |                                |
| Plaintiff,                           | ) |                                |
|                                      | ) |                                |
| v.                                   | ) | Civil Action No. 13-0181 (ABJ) |
|                                      | ) |                                |
| HARTFORD FINANCIAL SERVICES          | ) |                                |
| GROUP, INC., *et al.*,               | ) |                                |
|                                      | ) |                                |
| Defendants.                          | ) |                                |

## MEMORANDUM OPINION

Plaintiff Walter E. Campbell Company ("WECCO") – a Maryland Corporation with its principal place of business in Maryland – brings this action against eight diverse corporations, and Property and Casualty Insurance Guaranty Corporation ("PCIGC") – another Maryland Corporation with its principal place of business in Maryland. WECCO originally filed its complaint in Superior Court for the District of Columbia. Original File [Dkt. # 24-1] at 34–43. In the Superior Court, PCIGC moved to dismiss all claims against it or, in the alternative, for summary judgment, for lack of personal jurisdiction. *Id.* at 8–22. With the consent of PCIGC, the other eight defendants then removed the action to this Court on February 11, 2013, under the theory that WECCO had fraudulently joined PCIGC to the action in order to sever complete diversity and prevent jurisdiction in the federal court system. *Id.* at 1–3. *See generally* Mem. of Points and Authorities in Support of Certain Defs.' Opp. to Pl.'s Mot. to Remand [Dkt. # 39] ("Defs.' Mem."). In this Court, six of the defendants have moved to dismiss the action or, in the alternative, for a stay pending the resolution of a related action in the United States District Court for the District of Maryland. Certain Defs.' Mot. to Dismiss or, in the Alternative, to Stay [Dkt.

# 19]. WECCO has now moved to remand the action back to the Superior Court. Mot. to Remand [Dkt. # 28]. Both of those motions are fully briefed and currently pending. Because the Court finds that defendants have not met their burden of proving that WECCO fraudulently joined PCIGC as a defendant to defeat diversity jurisdiction in the federal courts, the Court lacks subject matter jurisdiction over this matter and will, therefore, remand the action to the Superior Court for the District of Columbia.

## BACKGROUND

WECCO is a Maryland corporation that deals in insulation materials. Compl., Dkt. # 24-1] at 35–43, ¶ 4. Its principal place of business is in Maryland. *Id*. According to the complaint, WECCO was "headquartered" in the District of Columbia until 1968, and "[t]hroughout its history, WECCO's business centered on the District of Columbia, and in the immediately surrounding areas." *Id.* ¶¶ 4, 15.

The complaint in this action alleges that for many decades, WECCO handled, installed, disturbed, removed, and sold asbestos-containing insulation material. Compl. ¶ 4. Defendants are insurance companies that either themselves provided, or guaranteed other now-insolvent insurance companies that had provided, liability insurance to WECCO. *Id.* ¶¶ 5–14. The sole cause of action in the complaint before this Court arises from an insurance dispute between WECCO and defendants concerning coverage for bodily injury and wrongful death lawsuits that have been filed against WECCO alleging exposure to asbestos during WECCO's work. *Id.* ¶¶ 30–36. The complaint alleges that according to the asbestos plaintiffs' bar, WECCO used asbestos-containing materials in its work throughout the period comprising the insurance policies at issue in this action. *Id.* ¶ 4. WECCO seeks a declaration that the personal injury suits are within the general liability portion of the policies at issue and subject only to the "per

occurrence" limits of liability in those policies, and that the present and future asbestos suits against WECCO arise out of multiple "occurrences" as that term is used in the policies. Compl. at 10.

Defendant PCIGC is a Maryland Corporation with its principal place of business in Maryland. Compl. ¶ 14. PCIGC was established by a Maryland statute, Md. Code, Insurance § 9-301, *et seq.*, under which it is required to pay covered claims to Maryland policyholders on behalf of insolvent insurance companies. By statute, PCIGC acts as a guarantor only for insurers that are residents of the State of Maryland. Md. Code, Insurance § 9-301(d)(1)(i), (h). PCIGC acts as a guarantor for both American Mutual Liability Insurance Company ("American Mutual") and Centennial Insurance Company ("Centennial"). Compl. ¶ 14.[1] According to the complaint, both American Mutual and Centennial are insolvent insurers that issued liability policies to WECCO. *Id.* American Mutual contracted with WECCO to provide insurance between 1963 and November 19, 1972. *Id.* ¶ 19. Centennial contracted with WECCO to provide insurance between March 1, 1973, and March 1, 1974. *Id.* ¶ 22.

WECCO filed its complaint in Superior Court for the District of Columbia on January 7, 2013. *See* Original File [Dkt. # 24-1] at 64. Defendants filed their notice of removal in this Court on February 11, 2013. Notice of Removal [Dkt. # 1] at 5.

**STANDARD OF REVIEW**

A defendant may remove to federal court an action brought in a state court only when the federal court might have originally been brought in the federal court, including on the basis of diversity of citizenship. 28 U.S.C. § 1441(a); *see Busby v. Capital One, N.A.*, -- F. Supp. 2d --,

---

1  The Court construes the complaint as alleging that both American Mutual and Centennial are residents of Maryland because it states that PCIGC acts as a guarantor for both American Mutual and Centennial, Compl. ¶ 14, and because Maryland statute only authorizes PCIGC to guaranty Maryland residents, Md. Code, Insurance § 9-301(d)(1)(i), (h).

3

Civ. A. No. 11-01172(CKK), 2013 WL 1191180, at *6 (D.D.C. Mar. 25, 2013). Diversity jurisdiction exists when the amount in controversy exceeds $75,000 per plaintiff, exclusive of interest and costs, and the matter in controversy is between citizens of different states. 28 U.S.C. § 1332(a). When a federal court lacks subject matter jurisdiction over a dispute removed from state court, the court must remand the action back to the state court. 28 U.S.C. § 1447(c). The removing party bears the burden of showing that the federal court has subject matter jurisdiction over the action. *Wexler v. United Air Lines*, 496 F. Supp. 2d 150, 152 (D.D.C. 2007). "[I]f federal jurisdiction is doubtful, a remand to state court is necessary." *Breakman v. AOL, LLC*, 545 F. Supp. 2d 96, 100 (D.D.C. 2008).

In support of a removal petition, defendants may submit affidavits and deposition transcripts; and in support of a motion for remand, a plaintiff may submit affidavits and deposition transcripts along with the factual allegations contained in the verified complaint. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). In assessing the motion for remand, the Court must assume all of the facts set forth by plaintiff to be true and resolve all uncertainties as to state substantive law in favor of the plaintiff. *Id*. "Moreover, the court must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." *Id.*

## ANALYSIS

WECCO asks the Court to remand this action to the Superior Court because, it argues, defendants erred in removing this case on diversity grounds.[2] As explained above, the district

---

2   In addition, six defendants (not including PCIGC) have moved to dismiss this action or, in the alternative, to stay it pending a related case in the United States District Court for the District of Maryland. Certain Defs.' Mot. to Dismiss or, in the Alternative, to Stay [Dkt. # 19]. The Court will not reach that motion since it will remand the case back to the Superior Court for the District of Columbia on jurisdictional grounds.

courts have original jurisdiction over all civil actions if the matter is between citizens of different states, as long as the $75,000 amount in controversy requirement is satisfied. 28 U.S.C. § 1332. Here, it is undisputed that both WECCO and PCIGC are citizens of Maryland. Compl. ¶¶ 4, 14. So at first glance, it would appear that WECCO is correct that the parties lack complete diversity of citizenship.

Defendants, however, maintain that removal on diversity grounds was proper because WECCO fraudulently named PCIGC, the only non-diverse defendant, for purposes of defeating diversity jurisdiction in the federal courts. *See generally* Defs.' Mem. The fraudulent joinder doctrine allows the Court to "disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Thus, defendants argue that the Court should dismiss the non-diverse defendant PCIGC from the case, and thereby retain jurisdiction.

In assessing a claim of "fraudulent joinder," the removing party bears the burden of proving that, either "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the . . . defendant into state court." *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d 31, 39 (D.D.C. 2000). Here, defendants make only the first argument. They argue that there is no possibility that WECCO can establish a cause of action against PCIGC because the Court lacks personal jurisdiction over it.

Defendants' burden of proof to establish fraudulent joinder is "a heavy one." *In re Tobacco/Governmental Health Care Costs Litig.*, 100 F. Supp. 2d at 39, quoting *Pacheco de Perez v. AT&T*, 139 F.3d 1368, 1380 (11th Cir. 1998) (internal quotation marks omitted).

Fraudulent joinder only arises if, construing all facts and uncertainties in the state substantive law in favor of the plaintiffs, the district court finds that there is "no possibility of a valid cause of action being set forth against the in-state defendant[.]" *B., Inc.*, 663 F.2d at 550. "However, if there is even a possibility that a state court would find a cause of action stated against [the in-state defendant] on the facts alleged by the plaintiff, then the federal court must find that the in-state defendant[ has] been properly joined, that there is incomplete diversity, and that the case must be remanded to the state courts." *Id.*

Defendants argue that there is no possibility that WECCO can set forth a valid cause of action against PCIGC because the court has no personal jurisdiction over PCIGC. Courts may exercise two forms of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). The only type at issue here is specific jurisdiction. Specific jurisdiction exists where a claim arises out of the nonresident defendant's contacts with the forum. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). "To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry . . . ." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d. 1343, 1347 (D.C. Cir. 2000). It first determines "whether jurisdiction over a party is proper under the applicable local long-arm statute." *United States v. Ferrara,* 54 F.3d. 825, 828 (D.C. Cir. 1995). If so, it examines "whether [jurisdiction] accords with the demands of due process." *Id.*

I. **The District of Columbia Long-Arm Statute**

The District of Columbia long-arm statute lists a number of different ways that a person might make sufficient contacts with the District for the courts to exercise personal jurisdiction

over it. D.C. Code § 13-423. The clauses relevant to this action provide for jurisdiction over claims arising from a person's:

> (1) [T]ransacting any business in the District of Columbia; [or] . . .
>
> (6) "[C]ontracting to insure or act as a surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing[.]"

D.C. Code § 13-423(a)(1), (6). At least one court has stated that the District of Columbia's long-arm statute extends to the bounds of due process. *See, e.g.*, *Harris v. Omelon*, 985 A.2d 1103, 1105 n.1 (D.C. 2009) ("The District of Columbia's long-arm statute is coextensive with the reach of personal jurisdiction permitted under the Due Process Clause."). However, the D.C. Circuit has recognized that not all of the provisions that might be applicable in a particular situation extend so far. *See Mwani v. bin Laden*, 417 F.3d 1, 9 (D.C. Cir. 2005) (recognizing that the district courts have concluded that the transacting any business provision is coextensive with the due process clause, but finding that the applicable provision in that case, D.C. Code § 13-423(a)(4), does not extend to due process); *see also Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 329 (D.C. 2000) (finding that the "transacting any business" clause is coextensive with the personal jurisdiction allowed by the Due Process clause of the United States Constitution); *Holder v. Haarman & Reimer Corp.*, 779 A.2d 264, 269 (D.C. 2001) (same).

A. The "contracting to insure" clause

While it is far from clear that WECCO can establish personal jurisdiction under the "contracting to insure" clause of the long-arm statute, the Court hesitates to find that there is no possibility that it could. By its express language, the clause applies to entities that insure or act as sureties, but at least two other courts in this district have found that the clause covers "guarantors," like PCIGC. *See United States v. Rollinson*, 629 F. Supp. 581, 587 (D.D.C. 1986);

7

*Broadcast Capital, Inc. v. Molnar*, Civ. A. No. 93-1240, 1993 WL 594355, at *1–2 (D.D.C. Dec. 27, 1993).

Moreover, in this case, PCIGC arguably acted as guarantor for an obligation that was located or executed in the District of Columbia. PCIGC acted as guarantor for both American Mutual and Centennial. Compl. ¶ 14. American Mutual is a Maryland company that allegedly covered WECCO's liability during the time that WECCO was installing asbestos-laden insulation from its Washington D.C. headquarters. Compl. ¶¶ 4, 17, 19; *see also supra* note 1. There is some question whether the fact that WECCO was "headquartered" in Washington D.C. when it agreed to and actually installed the insulation satisfies the requirement that the "person, property, or risk, contract, obligation, or agreement" be "located, executed, or to be performed" in the District – particularly given that WECCO provides no details regarding whether the contracts guaranteed by PCIGC were executed in the District or whether the asbestos was actually installed in the District. The complaint states merely that "[t]hroughout its history, WECCO's business centered on the District of Columbia, and in the immediately surrounding areas," Compl. ¶ 15, and defendants do not provide any additional details. However, defendants bear the "heavy" burden of proof here and the Court must construe any uncertainties, whether legal or factual, in favor of WECCO.

The most difficult issue stems from the word "contracting." According to its plain language, the clause extends jurisdiction only over claims arising from an individual's "*contracting*" to insure or act as a surety. D.C. Code § 13-423(a)(6) (emphasis added). There is no dispute that PCIGC did not enter into any contract with American Mutual. Rather, PCIGC acts as guarantor by statute. In both of the cases in which courts in this district have found that the clause covers guarantors, the guarantors had entered into contracts with the entity that they

were guaranteeing. *Rollinson*, 629 F. Supp. at 582–83, 587; *Broadcast Capital*, 1993 WL 594355 at *1. So, it would appear that the "contracting to insure" clause cannot cover PCIGC here.

At least one circuit, however, has characterized the role of a guarantor as "standing in the shoes" of the insolvent insurer. *See Oliver v. Merritt Dredging Co., Inc.*, 979 F.2d 827, 833 (11th Cir. 1992). And if this Court were to apply that rationale, it could find that PCIGC satisfies the "contracting" requirement by standing in the shoes of American Mutual, which contracted to insure the risk at issue in this case. In *Oliver*, the question before the Eleventh Circuit Court of Appeals was whether an Alabama court had personal jurisdiction over two guarantors – one of which had been established by a South Carolina statute and the other by a Louisiana statute – for an insolvent insurer's liability that arose from accidents that occurred while the insured was operating vessels in Alabama waters. *Id.* at 831–32. The Alabama long-arm statute extended the courts' jurisdiction over any person whose liability arose as a consequence of that person's "contracting to insure any person, properly, or risk located within this state at the time of contracting." *Id.* at 831. There was no question that the Alabama court would have had personal jurisdiction over the insurer had the insurer not become insolvent. *Id.* Moreover, the plaintiff's claim was a "covered claim" under the state statutes creating the guarantors. *Id.* at 831. The court found that it had personal jurisdiction over both guarantors on the grounds that they, "by standing in [the insolvent insurer's] shoes, also have consented to jurisdiction in the state's courts." *Id.* at 833.

PCIGC seeks to distinguish the instant case by pointing out that PCIGC does not assume "all obligations of the insolvent insurer, much less assume its residency status," Mem. of Law in Support of PCIGC's Mot. to Dismiss, or in the Alternative, for Summ. J., [Dkt. # 24-1] at 11–22,

9

at 5, but there does not appear to be any dispute that PCIGC would assume liability for the claim in question here, and that this was entirely foreseeable on the face of the statute. Applying the Eleventh Circuit's reasoning, then, PCIGC stands in the shoes of American Mutual, which "contracted to insure or act as a surety" for WECCO. PCIGC could therefore be found to be subject to the jurisdiction of the D.C. courts under the "contracting to insure" clause of the long-arm statute.

Although defendants correctly point out that several courts have disagreed with the Eleventh Circuit's reasoning in *Oliver*, *see Home Indem Co. v. Stimson Lumber Co.*, 289 F. Supp. 2d 1222, 1227–28 (D. Or. 2003); *Gen. Elec. Co. v. Cal. Ins. Guar. Ass'n*, 997 S.W.2d 923, 927–28 (Tx. Ct. App. 1999); *Tex. Prop. & Cas. Ins. Guar. Ass'n v. Boy Scouts of Am.*, 947 S.W.2d 682, 688–89 (Tx. Ct. App. 1997); *Pa. Health and Life Guar. Ass'n v. Superior Ct.*, 27 Cal. Rptr. 2d 507, 512–14 (Cal. Ct. App. 1994), *Ga. Insurers Insolvency Pool v. Brewer*, 602 So.2d 1264, 1267–68 (Fla. 1992), the D.C. courts have not directly addressed this issue. Accordingly, since the Court must construe any legal uncertainties in favor of WECCO, the Court cannot say that there is no possibility that a D.C. court would find that the "contracting to insure" clause of the D.C. long-arm statute covers PCIGC here.

**II.     Due Process**

To determine whether PCIGC was fraudulently joined as a defendant in this case, the Court must also determine whether there is any possibility that a D.C. court could find that due

process would be satisfied by the exercise of personal jurisdiction over PCIGC.[3] In order for the exercise of personal jurisdiction to comport with due process, a defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The courts look to whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 287 (1980). That inquiry is satisfied "if the defendant has purposefully directed his activities at residents of the forum, and the ligation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal quotation marks and citation omitted).

In *Olivier*, the Eleventh Circuit found that its exercise of jurisdiction over the two foreign guarantors satisfied due process because the guarantors stepped into the shoes of the defunct

---

3 The Court also notes that the "transacting any business" clause of the District of Columbia long-arm statute has consistently been held to extend to the bounds of due process. *See, e.g.*, *Mouzavires v. Baxter*, 434 A.2d 988, 993 (D.C. 1981) ("In sum, the sweep of the 'transacting any business' provision of D.C. Code 1973, § 13-423(a)(1), covers any transaction of business in the District of Columbia that can be reached jurisdictionally without offending the due process clause."); *Shoppers Food Warehouse*, 746 A.2d at 329 (finding that the "transacting any business" clause is coextensive with the personal jurisdiction allowed by the due process clause of the United States Constitution). Accordingly, if a D.C. court were to find that its exercise of personal jurisdiction over PCIGC in this case comports with due process, it could also find that PCIGC's business contacts with the District of Columbia satisfy the "transacting any business" clause of the long-arm statute. *See FDIC v. U.S. Titles, Inc.*, -- F. Supp. 2d --, Civ. A. No. 12-1946(JEB), 2013 WL 1635566, at *4 (D.D.C. Apr. 17, 2013) (deciding that the Court did not need to determine whether the second or sixth prongs of the long-arm statute covered a closing agent in an action alleging breach of contract because the "transacting any business" provision, which is "coextensive in reach with the personal jurisdiction allowed by the due process clause of the United States Constitution" covered it); *but see Broadcast Capital, Inc. v. Molnar*, Civ. A. No. 93-1240SSH, 1993 WL 594355, at *1–2 (D.D.C. Dec. 27, 1993) (analyzing whether a guarantor of an insurer's coverage was subject to personal jurisdiction in the District of Columbia under only the "contracting to insure" clause of the D.C. long-arm statute).

insurers, and it was foreseeable that the guarantors could become involved in litigation in the foreign state. 979 F.2d at 833. The court stated that "[i]n forming the state insurance guaranty associations to avoid federal legislation creating a national guaranty fund, the insurance industry had to anticipate that the guaranty associations would be haled into the same courts where their insolvent members would have been subject to the reach of due process. Thus [the foreign guarantors] consented to service of process in Alabama in this case." *Id.* It relied on the fact that the guarantors not only guaranteed payment of "covered claims," but "they also assumed all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." *Id.* Similarly here, PCIGC, by statute, "shall be deemed the insurer to the extent of [PCIGC's] obligation on the covered claims and, to that extent, shall have the rights, duties, and obligations that the insolvent insurer would have had if the insurer had not become insolvent." *See* MD Code, Insurance § 9-306(c). Thus, following the Eleventh Circuit, a court in this jurisdiction could find that if American Mutual had sufficient contacts with the District of Columbia to be subject to the jurisdiction of its courts, then PCIGC, standing in American Mutual's shoes, also consented to be subject to the jurisdiction of the D.C. courts. And, as addressed above, no court in this jurisdiction has decided this precise issue, so this Court cannot say that the D.C. courts would not elect to follow the Eleventh Circuit.

But even if a court in this jurisdiction might find that PCIGC stands in American Mutual's shoes for purposes of personal jurisdiction, the Court must still determine whether there is any possibility that American Mutual would have been subject to the jurisdiction of the D.C. Courts had it not become insolvent. In other words, is there any possibility that a D.C. court would find that American Mutual had sufficient contacts with the District of Columbia, arising from the activities that gave rise to this lawsuit, such that its exercise of jurisdiction over

American Mutual would not have violated due process? The Court has very little information from which to answer that question.

The only relevant factual allegations before the Court are that American Mutual was a Maryland company that contracted with WECCO to provide insurance between 1963 and 1972. Compl. ¶ 19; *see also supra* note 1. During at least part of that time, WECCO was "headquartered" in the District of Columbia, and "WECCO's business centered on the District of Columbia, and in the immediately surrounding areas." Compl. ¶¶ 4, 15. Ultimately, the question of whether American Mutual's conduct is such that it should have reasonably anticipated being haled into a D.C. court for questions relating to the coverage of the insurance policy it issued to WECCO will turn on the content of that policy. And the policy document has not been provided to this Court. So this Court cannot say, given the facts before it, that there is no possibility a D.C. court could find that it would have had personal jurisdiction over American Mutual for purposes of WECCO's claims, had American Mutual not become insolvent.

**CONCLUSION**

Because this Court cannot find, based on the facts presented and the precedent of the District of Columbia courts, construed in favor of WECCO, that there is no possibility WECCO can establish a cause of action against PCIGC, it must reject PCIGC's fraudulent joinder argument. Accordingly, the Court will grant WECCO's motion to remand this case for lack of subject-matter jurisdiction [Dkt. # 28] and remand this action to the Superior Court for the District of Columbia. A separate order will issue.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: August 13, 2013